WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| L. Steve Lory; L. Steve Lory IRA; Glenn Haney,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>Kevin J. Ryan; Robert L. Erwin; Ronald J. Artale; Daniel Tuse,<br><br>　　　　　Defendants. | No. CV07-2174-PHX-NVW<br><br>**ORDER** |

　　　　Plaintiffs L. Steve Lory, L. Steve Lory IRA, and Glenn Haney (collectively "the Shareholders") brought this action for securities fraud against Defendants Kevin J. Ryan, Robert L. Erwin, Ronald J. Artale, and Daniel Tuse (collectively "the Officers") after the stock of Large Scale Biology Corp. ("LSBC") plunged in value.  The Officers previously moved to dismiss the amended complaint.  The Shareholders conceded that the amended complaint failed to state a claim for securities fraud and the court granted leave to amend for a second time.  The Officers now move to dismiss the Second Amended Complaint under Fed. R. Civ. P. 12(b)(6).  (Doc. # 42.)

**I.  Background**

　　　　On this motion to dismiss, the factual allegations of the complaint are taken as true and are construed in the light most favorable to the Shareholders.  *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994).  The Shareholders regularly

1  purchased common stock in LSBC from October of 2000 through January of 2006.
2  During that period, the Officers issued press releases and participated in conference calls
3  regarding LSBC's products and partnerships.  The Shareholders' central contention is that
4  the Officers made false or misleading statements and omissions in those releases and
5  calls.

6        LSBC announced the introduction of its new product, Aprotinin, in August of
7  2003.  On February 4, 2004, Defendant Ryan stated that LSBC had begun shipping
8  samples of Aprotinin for manufacturing and research use, "which we believe will result in
9  multiple supply agreements kicking off in beginning of third quarter, 2004."  He further
10 stated, "We expect substantial revenue from that source."  At another point, Defendant
11 Ryan stated that the "product will be out and generating revenues in this late, first, early,
12 second quarter."  On April 28, 2004, he stated that in mid-summer LSBC would "enter
13 into our largest commercial product stage with Sigma-Aldrich.  We expect that to grow
14 into a very nice market, as it improves the ability of companies to use Aprotinin for
15 manufacturing purposes . . . ."  Defendant Tuse acknowledged the possibility that
16 regulatory hurdles could dampen interest in LSBC's manufacturing and research-use
17 Aprotinin, "but said he believed the level of clinical work required . . . would likely be 'a
18 minimal amount.'"

19       LSBC also hoped to market Aprotinin for clinical applications.  On November 8,
20 2005, Defendant Erwin stated that LSBC had "entered into new partnering discussions for
21 development of our Aprotinin product for clinical applications . . . [and] we believe we
22 can complete a transaction for pharmaceutical Aprotinin during the next 90 days."
23 Defendant Tuse stated that partnership negotiations had proceeded to the "term sheet" and
24 in one case they had "a signature ready agreement with one potential partner."

25       The Officers made a number of similar statements about partnership prospects with
26 various pharmaceutical companies.  For example, Defendant Ryan stated on February 4,
27 2004, that LSBC "executed an agreement with Schering-Plough Animal Health, which
28 we believe will lead to a vaccine product, which could be marketed as early as the

beginning of next year . . . ." On September 9, 2004, he stated that LSBC had entered into a collaborative partnership with Perkin Elmer that would "add significant value" to the company's customers. He stated on November 9, 2004, that LSBC's subsidiary PDI had "14 major projects . . . . Will we close them all? Absolutely not. But are they interested at this point? Absolutely." And on August 9, 2005, he stated that "LSBC made solid progress in the second quarter in its research and development collaboration with Bayer . . . ."

LSBC shut down its operations in December of 2005 and filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code on January 9, 2006. The value of the company's stock plunged and the Shareholders suffered $880,000 in losses.

## II. Analysis

"A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121–22 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). The Shareholders allege that Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege: (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which they relied (5) which proximately caused plaintiff's injury. *Dsam Global Value Fund v. Altris Software*, 288 F.3d 385, 388 (9th Cir. 2002) (citing *McCormick v. Fund American Cos.*, 26 F.3d 869, 875 (9th Cir. 1994)).

The Shareholders must not only meet the requirement of pleading fraud with specificity under Fed. R. Civ. P. 9(b), but also the more demanding pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b). Under PSLRA, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint

- 3 -

shall state with particularity all facts on which that belief is formed." § 78u-4(b)(1).  A plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," § 78u-4(b)(2), and must prove that the defendant's misrepresentations "caused the loss for which the plaintiff seeks to recover." § 78u-4(b)(4).

### I. The Officers' Forward-Looking Statements

Under PSLRA, a person cannot be held liable for making "forward-looking statements" of corporate optimism, so long as the maker identifies the statement as forward-looking or makes the statement without "actual knowledge . . . that the statement was false or misleading."  15 U.S.C. § 78u-5(c).  Most of the statements that the Shareholders have identified concerned anticipated partnership agreements, developmental research, and revenue streams from product sales.  Those types of statements qualify as forward-looking statements.  *See* § 78u-5(I) (forward-looking statements include, among other things, financial projections, plans and objectives of management for future operations including plans relating to products, and future economic performance).

There is no indication that the Officers failed to disclose the forward-looking nature of these statements when they were made.  Furthermore, the complaint contains no facts indicating that the forward-looking statements were false when made or that the Officers knew they were false.  The Shareholders allege that the Officers knew that Aprotinin could not generate revenue in the near term because, after LSBC declared bankruptcy, Defendant Erwin admitted that Aprotinin "would need three years and several million dollars to complete development."[1]  The context of that statement shows

---

[1] This statement appeared in a January 13, 2006 article in the Sacramento Business Journal.  The Officers have requested the court to take judicial notice of the full article.  (Doc. # 41, Ex. Q.)  Under the incorporation by reference doctrine, district courts may consider documents "whose contents are alleged in  a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*,

- 4 -

1  that it concerned development of Aprotinin for clinical or therapeutic uses. LSBC had
2  "defined a regulatory path towards approval of several of the company's therapeutic
3  products" that would take many years and significant investment to complete. But that
4  does not strongly suggest that the Officers lied when they said that Aprotinin for a
5  different use—manufacturing and research—would probably begin generating revenue in
6  2004. The Shareholders have identified no statement of an Officer projecting near-term
7  sales of Aprotinin for clinical uses. Defendant Erwin's statement that LSBC "can
8  complete a transaction for pharmaceutical Aprotinin during the next 90 days" referred to
9  the company's expectation of a partnership agreement for development of clinical
10 Aprotinin, not actual sales of the product.

11     The Shareholders also allege that on December 23, 2005, Defendant Erwin
12 admitted that "drug companies do not know how easy it will be to win approval for [crop-
13 produced pharmaceuticals] from the Food and Drug Administration . . . . There are very
14 few corporate executives willing to bet on an unproven process." Defendant Erwin did
15 not say that LSBC had no potential partners; he stated that it was very difficult to find
16 partners. That was not a novel revelation to the market. Previously Defendant Tuse had
17 publically acknowledged that regulatory hurdles could dampen interest in their product.
18 The complaint does not show that the Officers' optimism in the face of that adversity was
19 unreasonable. *See Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1158–59 (9th
20 Cir. 1996) (holding that general expressions of optimism were not actionable where it was
21 not shown that defendants "lacked at least a reasonable basis for their various
22 representations, even though in hindsight they may now appear a little too rosy"). The

---

14 F.3d 449, 454 (9th Cir. 1994)). The Officers avow that they have submitted a true and correct version of the Sacramento Business Journal article, and the Shareholders have not questioned the authenticity of that document. The court will therefore consider the contents of the article on this motion to dismiss for the sole purpose of placing the alleged statement in its proper context.

- 5 -

1 Shareholders allege no facts indicating that the Officers knew that their predictions of
2 future partnerships, development efforts, or revenue streams were false.

## II.  The Officers' Statements of Fact

According to the complaint, the Officers stated that LSBC had executed agreements with Schering-Plough Animal Health and Perkin Elmer, which they expected to produce revenue. They also stated that they had made progress on a partnership with Bayer. The Officers further represented that: (1) that their "Plurigen" product required no FDA approval; (2) that some of their products had undergone "peer review test comparisons;" and (3) that LSBC had a research collaboration with Dr. Liotta and Dr. Petricoin. The complaint does not contain specific facts showing that any of these statements were false when made. "This falsity requirement can be satisfied 'by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants.'" *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999). The Shareholders cite no such information, relying almost entirely on the mere allegation that the statements were false. Although the Shareholders do cite a few statements by the Officers showing that their partnership efforts ultimately failed, there are no facts in the complaint that suggest that the partnerships never existed at all. The Shareholders also complain that the Officers failed to disclose the company's true dire financial picture, but only generally allege that someone at some point stated that LSBC had a line of credit from Brittany Capital and was in a good position going forward. They have not identified with particularity a single misstatement by any of the Officers specifically about LSBC's financial health.

Furthermore, there are no facts strongly suggesting that the Officers intentionally or recklessly mislead the Shareholders with their statements. To satisfy Rule 9(b) and PSLRA, "the complaint must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001). The complaint contains no such detail. Instead, the Shareholders rely on

- 6 -

1 speculative arguments regarding the nature of the Officers' compensation and their
2 motivations for loaning money to LSBC.  Such general allegations of motive or
3 opportunity to commit securities fraud do not create a strong inference of scienter.  *In re*
4 *Calpine Corp. Secs. Litig.*, 288 F. Supp. 2d 1054, 1087 (N.D. Cal. 2003).

### III. Reliance and Causation

Assuming for purposes of this analysis that the statements were false and made with scienter, the complaint does not show that the Shareholders relied on the false statements or that the false statements caused their injury.  "[T]he plaintiff must show that, but for the fraud, the plaintiff would not have engaged in the transaction at issue . . . [and] the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff."  *In re Daou Sys.*, 411 F.3d 1006, 1025 (9th Cir. 2005) (citing *The Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999)).  Although the Shareholders have alleged that they relied on the Officers' misrepresentations in purchasing the stock, "a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  The Shareholders must allege facts sufficient "to raise a right to relief above the speculative level."  *Id*.  The only fact that they have alleged is that they purchased common stock in LSBC between October of 2000 and January of 2006.  They have not tied any stock purchase to any one of the false statements they have identified.

Furthermore, "the complaint must allege that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 534 F.3d 1068, 1082 (9th Cir. 2008).  Even assuming that the statements were false, the causal link between many of the statements and the Shareholders' loss is tenuous at best.  For example, they provide no reason to believe that LSBC's share price declined in response to some public revelation about the need for FDA approval of Plurigen.  They have not shown that the stock price declined when LSBC's lack of collaboration with Dr. Liotta or Dr. Petricoin became known to the

1  public. Nor have they shown that news of the failure of any particular partnership had
2  anything to do with the drop in share price. Although the Shareholders do not have to
3  show that any particular misstatement was the sole reason for a decline in LSBC's share
4  price, *In re Daou Sys.*, 411 F.3d at 1025, they cannot rely exclusively on the fact that the
5  share price declined after LSBC declared bankruptcy and revealed that the company was
6  out of money, *see Metzler*, 534 F.3d at 1081 (explaining that loss causation was
7  adequately plead where a "complaint alleged that the market learned of and reacted to [a
8  particular] fraud, as opposed to merely reacting to reports of the defendant's poor
9  financial health generally").

10  **IV. No Leave to Amend**

11  The Shareholders have requested leave to amend their complaint for a third time.
12  "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).
13  However, "discretion to deny leave to amend is particularly broad where plaintiff has
14  previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149,
15  1160 (9th Cir. 1989). As the court noted in its previous order, the Shareholders have
16  received notice, on multiple occasions, of the elevated pleading standard for securities
17  fraud and of potential deficiencies in their complaint. (Doc. ## 8, 11, 27, 37.) As
18  explained above, their complaint is still pervasively deficient, indicating that any further
19  leave to amend would be futile and cause unnecessary delay. *Ascon Props.*, 866 F.2d at
20  1160 ("Leave need not be granted where the amendment of the complaint would cause
21  the opposing party undue prejudice . . . or creates undue delay."); *Bonin v. Calderon*, 59
22  F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of
23  a motion for leave to amend."). The problem with the complaint is not a technical
24  deficiency that can be corrected; the problem is that the facts alleged simply do not add
25  up to securities fraud. The Shareholders will not be granted further leave to amend their
26  complaint.

27  IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiffs'
28  Second Amended Complaint (doc. # 42) is granted.

1   IT IS FURTHER ORDERED that the Clerk shall enter judgment dismissing the
2   Second Amended Complaint with prejudice for failure to state a claim upon which relief
3   can be granted and shall terminate this case.

DATED this 17th day of October, 2008.

_Neil V. Wake_
Neil V. Wake
United States District Judge